## SUCCESSION OF L. A. RACHAL.

An Administrator dies without having rendered his account. An Administrator is appointed for his estate. The only regular account the latter can render is of the succession of which he is the administrator. By pursuing the forms of law, his account of this administration may bind such persons as are bound to take notice thereof; but he can bind no one by a pretended account of the administration, by his intestate and himself, of a succession of which he himself never was the legal representative.

APPEAL from the District Court of Natchitoches, *Chaplin*, J.
*Hamilton & Chaplin*, for appellants. *A. H. Pearson*, for administrator, appellee.

MERRICK, C. J. *L. A. Rachal* and *Louis Gallier*, were commercial partners. *Rachal* died in 1853. *J. B. Anty* was appointed administrator of the succession of *Rachal* in January, 1854. *Anty* died, and *William P. Morrow* was appointed administrator of *L. A. Rachal's* succession in December, 1854. *P. Oscar Chaler*, was appointed administrator af *Anty's* succession. This last named person having obtained from *Gallier* the partnership accounts, employed one *Murphy* to collect them and procure their acknowledgement and thereby

incurred a debt to *Murphy* for $203, on this account.   Afterwards *Chaler* filed
an "account of the administration of *J. B. Anty* as administrator of *Louis
Alexander Rachal's* succession."

In this account he proposed to return to the administrator of *Rachal* the
acknowledged accounts with a list of those insolvent, or otherwise not collected,
and also placed *Murphy* thereon as a creditor for the amount due him, and
made publication and cited the heirs precisely in the manner he would have
done, had he been administrator of *Rachal's* estate instead of that of *Anty*.
The surviving partner, *Gallier*, opposed the account because, as he alleged, the
partnership was charged with a sum of over $200 to *Denis V. Murphy*, when
it should be paid by the administrator himself, and because *Anty's* succession
was responsible for the accounts not collected.

The account was homologated and the administrator was allowed to pay over
to the administrator of *Rachal* the assets, and the decree recognized the debt of
*Murphy* as a just debt against the succession of *L. A. Rachal*, to be paid in
the due course of administration.   *Gallier* appealed.   No injustice has been
done *Gallier* by the decree of the lower court.   He himself handed the
partnership accounts to *Chaler* after *Morrow* was appointed administrator.   He
cannot complain, therefore, that they were placed in *Murphy's* hands to procure
their acknowledgments and thus interrupt prescription.   Neither does the de-
cree against *Rachal's* estate so far as we can now perceive prejudice him in
those respects of which he complains.

But we must not be understood as sanctioning a proceeding so extremely ir-
regular as this.   *Chaler* could bind no one (except, at least, they were regularly
cited,) by his pretended account of his and *Anty's* administration of *Rachal's*
succession.   The only regular account which he can render will be of *Anty's*
succession, of which he is administrator.   1 Rob. 404.   By pursuing the forms
of law his account of his administration of that estate may bind such persons
as are bound to take notice of the same, but he cannot, by a mere publication,
bind the administrator of *Rachal's* succession to pay out of that estate a sum
of money to a third person.   As the judgment rendered cannot bind the ad-
ministrator of *Rachal's* succession, it cannot *as a judgment*, even incidentally,
bind *Gallier*, to the payment of the $203 allowed *Murphy* in this form of pro-
ceeding against *Rachal's* succession.

The administrator of *Rachal* is no party to the proceeding and the heirs of
*Rachal* who have been cited have not appealed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower
court be affirmed with costs.